UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:19-cv-036

FRED NEKOUEE, individually,         :
                                                   :
      Plaintiff,                  :
                                                   :
vs.                                                       :
                                                   :
FIRSTBANK OF LONGMONT, a Colorado    :
corporation; and                   :
                                                :
      Defendant.                :
_____:

## **COMPLAINT**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues the Defendant, FIRSTBANK OF LONGMONT, a Colorado corporation (sometimes referred to as "Defendant"), for injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.     Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County of Hillsborough.

2.     Defendant' property, a FirstBank, is located at 1707 N. Main Street, Longmont, Colorado 80501, in Boulder County ("FirstBank").

3.     Venue is proper in the District of Colorado because venue lies in the judicial district of the situs of the property. The Defendant's property is located in and does business within this judicial district.

4.     Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given

original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

5. Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.  Fred Nekouee has progressive multiple sclerosis and requires the use of a wheelchair for mobility.

6. Mr. Nekouee travels to the Longmont-Firestone area every three to six months to accompany his brother at heavy equipment auctions and to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to vacation.

7. Fred Nekouee has visited the property which forms the basis of this lawsuit on August 3, 2018 and October 1, 2018, and he obtained cash and sought to avail himself of the services at FirstBank on such dates.

8. Fred Nekouee attended a heavy equipment auction in the area on October 3, 2018, and he visited Rocky Mountain National Park on October 2, 2018.

9. Fred Nekouee plans to return to the property to avail himself of the services offered to the public at the property.

10. The Plaintiff has definite plans to return to the area and to the FirstBank in late January or early February of 2019.

11. FirstBank is close to the hotels he stays at in the area and is close to the heavy equipment auction and dealerships he visits.

12. When he travels, the Plaintiff has a need to obtain a cash or to use other banking services at banks like FirstBank.

13. The Plaintiff plans to return to FirstBank for a cash advance again.

14. For the reasons set forth in paragraphs 6-13 and 27, Fred Nekouee plans to return to the FirstBank

15. The Plaintiff has encountered architectural barriers at the subject property.

16. The barriers to access that the Plaintiff encountered at the property have endangered his safety, impaired his ability or those accompanying him to park a vehicle, impaired his ability to access the property, and have impaired his use of the restroom in FirstBank

17. The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

18. The Plaintiff cannot move up steep inclines or down steep slopes in his wheelchair because he lacks the strength and also risks tipping his wheelchair backwards or forwards.

19. Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

20. On his visits to FirstBank, the Plaintiff encountered excessively steep slopes in its parking, access aisles and walking surfaces.

21. The Plaintiff encountered and observed barriers to access in the restroom in FirstBank.

22. The Plaintiff is deterred from visiting the FirstBank, even though it is convenient to use since it is close to the hotels he stays at in the area and close to the heavy equipment auction and dealerships he visits in the area, because of the difficulties he will experience there until the property is made accessible to him in a wheelchair.

23. Defendant owns, leases, leases to, or operates a place of public accommodation (restaurant) as defined by the ADA, 42 U.S.C. § 12181(7)(F), and the regulations implementing

the ADA, 28 CFR 36.201(a) and 36.104.

24. Defendant is responsible for complying with the obligations of the ADA.

25. The place of public accommodation that the Defendant owns, operates, leases or leases to is FirstBank, a bank.

26. Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 31 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant.

27. Fred Nekouee desires to visit the FirstBank not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

28. The Defendant has discriminated against the individual by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the building, as prohibited by 42 U.S.C. § 12182 et seq.

29. The Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

30. Preliminary inspections of the FirstBank have shown that ADA violations exist there.

31. The ADA violations that Fred Nekouee personally encountered or observed

include, but are not limited to:

**PARKING**

    a.    In the parking lot serving FirstBank, the parking space for disabled patrons shown in the photograph below has a running slope as steep as about 1:27.8 (3.6%) and steeper than a slope of 1:48 (2%). This running slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4. The Plaintiff encountered this steep slope, and it made it very difficult for him to unload from and load back into his vehicle.



    b.    In the parking lot serving FirstBank, the parking space for disabled patrons shown in the photograph below has a running slope as steep as about 1:27.8 (3.6%) and steeper than a slope of 1:48 (2%). This slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4. The Plaintiff encountered this this slope, and it made him unstable in his wheelchair.



c.   In the parking lot serving FirstBank, the parking space for disabled patrons shown in the photograph below has a running slope as steep as about 1:26.3 (3.8%) and steeper than a running slope of 1:48 (2%), and it has a cross slope as steep as about 1:23.8 (4.2%) and steeper than a cross slope of 1:48 (2%).   These slopes are steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff encountered these slopes in this parking space, and they made him unstable in his wheelchair.



d. In the parking lot serving FirstBank, the cross slope of the middle portion of the parking space for disabled patrons shown in in the photograph below is as steep as about 1:28.6 (3.5%) and steeper than a cross slope of 1:48 (2%). This slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4. The Plaintiff encountered this slope while moving in his wheelchair, and it made him unstable in his wheelchair.

7



e. In the parking lot, the cross slope of the access aisle serving the disabled parking spaces shown in the photographs below is as steep as about 1:16.7 (6%) and steeper than slope of 1:48 (2%). This cross slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4. The Plaintiff encountered this slope in this access aisle in his wheelchair, and it made him unstable in his wheelchair.



8



f. In the parking lot serving FirstBank, the cross slope of the access aisle serving the disabled parking spaces shown in the photograph below is as steep as about 1:19.6 (5.1%) and steeper than a cross slope of 1:48 (2%). The cross slope in this access aisle is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4. The Plaintiff observed this condition, and it deters him from visiting FirstBank.



  g. The cross slope of the walking surface towards the entrance door is as steep as about 1:30.3 (3.3%) and steeper than a cross slope of 1:48 (2%). This cross slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 403.3. The Plaintiff encountered this condition, and it made him unstable in his wheelchair.

  h. The running slope of the accessibility ramp near the entrance to FirstBank is as steep as about 1:8.7 (11.5%) and steeper than a slope of 1:12 (8%). This slope is steeper than the maximum allowed slope of 1:12 (8%), in violation of Federal Law 2010, ADAAG 405.2. The Plaintiff encountered this steep slope while moving in his wheelchair, and due to it, he required assistance to move his wheelchair up this ramp and to control his wheelchair when he descended this ramp.

  i. The running slope of the accessibility ramp shown in the photograph in subparagraph (j) below is as steep as about 1:7.9 (12.6%) and steeper than a slope of 1:12 (8%). This slope of the ramp is steeper than the maximum allowed slope of 1:12 (8%), in violation of Federal Law 2010, ADAAG 405.2. The Plaintiff encountered this steep slope while moving in his wheelchair, and due to it, he required assistance to move his wheelchair up this ramp and to control his wheelchair when he descended this ramp.

  j. The slope of the accessible curb ramp flare shown in the photograph below is as steep as about 1:4.4 (22.8%) and steeper than a slope of 1:10 (10%), and the accessible ramp projects into the parking access aisle and does not have a proper landing. These conditions are in violation of Federal Law 2010, ADAAG §§ 406.3, 406.5, and 502.4  The Plaintiff encountered this curb ramp flare and the end of this ramp while moving in his wheelchair, and due to them, he was at risk of overturning his wheelchair.

10



k.  In the parking lot serving FirstBank, the drain gate openings shown in the access aisle in the photographs below are about 1 inch wide and more than ½ of an inch wide, and the elongated openings are not placed so that the long dimension is perpendicular to the dominant direction of travel in the access aisle.  These drain gate openings in the ground surface would allow passage of a sphere of more than ½ inch (13 mm) in diameter, and the elongated openings of this drain gate are not placed so that the long dimension is perpendicular to the dominant direction of travel in the access aisle, in violation of Federal Law 2010, ADAAG § 302.3.  The Plaintiff encountered this drain gate in this access aisle while moving in his wheelchair, and the drain gate openings stopped the forward movement of his wheelchair.





l.    The drain gates shown in the access aisle in the photograph in subparagraph (k) above contain a change of level of about 1 inch and more than ½ of an inch.   The change of level in the area of the drain gates is more than ½ inch, in violation of Federal Law 2010, ADAAG §§ 303.3 and 405.4.   The Plaintiff encountered this change of level, and it made

it difficult for him to move over it in his wheelchair.

**RESTROOM**

m. The restroom door pull side maneuvering clearance in a front approach perpendicular to the doorway is about 40 inches and less than a clearance space of 60 inches. This condition violates Federal Law 2010, ADAAG § 404.2.4. Due to this lack of clearance space, the Plaintiff required assistance to maneuver his wheelchair to exit the restroom.

n. In the restroom, the insulation under the sink is in need of repair and does not fully cover the lavatory pipes under the sink. This condition violates Federal Law 2010, ADAAG § 606.3 and 606.5. In his wheelchair, the Plaintiff encountered this condition when he used the sink, and due to it, he risked skin burns and injury to his legs.

o. In the restroom, the toilet does not have the flush control mounted on the open and wide side of the clear floor space. This condition violates Federal Law 2010, ADAAG § 604.6. Due to the location of this flush control, the Plaintiff had difficulty flushing this toilet.

p. In the restroom, the light switch is about 50 inches above the floor and higher than 48 inches above the finish floor. This light switch is outside the reach range of an individual in a wheelchair of a maximum allowed height of 48 inches (1220 mm) above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.1. The Plaintiff observed this condition.

q. In the restroom, the coat hook is about 65 inches above the floor and higher than 48 inches above the finish floor. This coat hook is outside the reach range of an individual in a wheelchair of a maximum allowed height of 48 inches (1220 mm) above the finish

floor, in violation of Federal Law 2010, ADAAG § 603.4.  The Plaintiff observed this condition.

r. The threshold of the entrance door to the restroom is about 1 inch high and higher than ½ of an inch.  This threshold is higher than the maximum height of ½ of an inch, in violation of Federal Law 2010, ADAAG § 404.2.5.  While moving in his wheelchair, the Plaintiff encountered this high threshold.

32. All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

33. The discriminatory violations described in paragraph 31 are not an exclusive list of the Defendant's ADA violations.  Plaintiff requires the inspection of the Defendant's place of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access and to determine all of the areas of non-compliance with the ADA.

34. The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant's building and its facilities, and have otherwise been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above.  The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

35. Defendant has discriminated against the individual by denying individuals access to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42

U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.

36. Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

37. Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted.

38. Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

39. Defendant is required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendant's place of public accommodation since January 26, 1992, then the Defendant is required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facility must be readily accessible to and useable by individuals with

disabilities as defined by the ADA.

40. Notice to Defendant is not required as a result of the Defendant's failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less). All other conditions precedent have been met by Plaintiff or waived by the Defendant.

41. Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require the Defendant to alter the FirstBank, its accessible parking lot spaces, access aisles and walkways, to make these facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facility until such time as the Defendant cures its violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a. That the Court issue a Declaratory Judgment that determines that the Defendant is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. at the commencement of the subject lawsuit.

b. Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facility; or to make such facility readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of

auxiliary aids and services.

    c.    An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

    d.    Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby designates Denver, Colorado as the place of trial for this action.

Respectfully submitted,

s/Robert J. Vincze\
Robert J. Vincze (CO #28399)\
Law Offices of Robert J. Vincze\
PO Box 792\
Andover, Kansas 67002\
Phone: 303-204-8207\
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*